UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON R. ACOSTA,<br><br>             Petitioner,<br><br>v.<br><br>G.J. GIURBINO, Warden,<br><br>             Respondent. | Case No. 06-CV-1527-WQH (JMA)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON PETITION FOR WRIT OF HABEAS CORPUS** |

**I.    Introduction**

Nelson R. Acosta ("Petitioner"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254 challenging his San Diego Superior Court conviction in case number SCD 181033 for robbery, burglary, assault, and other related charges. Petitioner contends that his sentence of 19 years, 4 months constituted cruel and unusual punishment under the Eighth Amendment of the Constitution and denied him due process and equal protection of the law. (See Petition, Ground One.) Petitioner further asserts that there was insufficient evidence to support his conviction for receiving stolen property. (See

Petition, Ground Two.)

The Court has considered the Petition, Respondent's Answer, Petitioner's Traverse, and all the supporting documents submitted by the parties.  Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court recommends that the Petition be **DENIED**.

II.  **Factual Background**

This Court gives deference to state court findings of fact and presumes them to be correct.  Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  The facts as found by the state appellate court are as follows:

> [¶] On February 21, 2004, [Adam] Ehlin and [Timothy] Cowdin went to Cowdin's apartment. Acosta and his girlfriend, Tamara Beachum, met Ehlin and Cowdin on the street outside the apartment. Cowdin had known Acosta for approximately nine months. The four went inside the apartment. Acosta was carrying a backpack. Once inside the apartment, Acosta went to the bathroom, Cowdin and Ehlin remained in the living room, and Beachum stayed near the front door.
>
> [¶]  Acosta came out of the bathroom with a gun in his hand. He immediately struck Cowdin in the back of the head with the gun. Acosta then pointed the gun at Cowdin's head and told him to get down on the ground. Cowdin did so. Acosta pointed the gun at Ehlin and repeatedly told him to get down on the ground. As Ehlin began to get down on the floor, Acosta struck him in the back of the head with the gun. Acosta hit Cowdin numerous times with the gun throughout the robbery. Acosta told Beachum to tie up Cowdin and Ehlin. Beachum tied the two victims together with rope. While Ehlin was being tied up, Acosta kicked him when he called out Cowdin's name.
>
> [¶]  While Ehlin and Cowdin were tied together on the

floor, they heard Acosta and Beachum rummaging through
the apartment. Acosta demanded money from Cowdin and
took his wallet. Before leaving the apartment, Acosta
also told Cowdin that if Cowdin went to the police,
Acosta would know immediately because he was a crooked
cop. Acosta held the gun at the side of Cowdin's head
and struck him with the gun while issuing this threat.
Acosta also told Cowdin that he should not try to get
up because Acosta was coming back. Acosta and Beachum
then left the apartment.

[¶]  After about 15 to 20 minutes, Cowdin and Ehlin
freed themselves. Cowdin determined that Acosta and
Beachum had taken a number of items from his apartment,
including video equipment, cameras, and his passport.
Cowdin reported the robbery to the police the next day.
Cowdin provided San Diego Police Detective John Keene
with a cellular telephone number Acosta had given him
on the day of the robbery. Keene was able to locate
Beachum though this telephone number.

[¶]  The police obtained a search warrant for Beachum's
apartment and conducted the search on February 27,
2004. During the search, the police found Cowdin's
passport and other items belonging to Cowdin. In
addition, the police found a gun, male and female
clothing, and a photo album with a picture of Acosta in
it. The police also discovered a laptop computer.
Beachum testified that Acosta had given her the
computer as a gift.

[¶] Detective Keene discovered a file on the computer
entitled "Seth Terndrup's resume."  Keene contacted
Seth Terndrup and asked him to come to the police
station to examine the computer.  Terndrup came to the
station and brought documentation including a sales
slip and warranty documents listing the model number
and serial number of the computer.  The documentation
indicated that Terndrup had purchased the computer for
$1,049.99 on December 3, 2003, from a Best Buy store in
Alexandria, Virginia.  Keene testified that he released
the computer to Terndrup based on his conversation with
him and Terndrup's production of the documentation
relating to the computer.

[¶] On May 2, 2004, the police arrested Acosta for an
offense distinct from those at issue in this case.
After his arrest, Keene interviewed Acosta regarding
the computer. Keene testified that Acosta told Keene
that he had purchased the computer from "a black male
on the streets."  Acosta told Keene that he had
purchased the computer for $100 and that Acosta
estimated it was worth as much as $300.  Keene asked
Acosta whether he thought the computer was stolen.
Keene testified that Acosta stated, "I guess I figured

1   for the price.  You know what I'm saying?"  Keene
    testified that after receiving this response, he asked
2   Acosta additional questions regarding the computer
    purchase.  Specifically, Keene testified that Acosta
3   stated that he had asked the person who was selling the
    computer, "Is it hot?"  In addition, Acosta told Keene
4   that the person who sold him the computer initially
    asked for $200, and that in response, Acosta offered
5   $100.  Keene also testified that Acosta could not
    provide the name of the person from whom he had
6   purchased the computer, where the purchase occurred, or
    the exact time when he obtained the computer.

7

8   (Lodgment No. 7 at 3-5.)

9   **III.  <u>Procedural Background</u>**

10       The San Diego County District Attorney's Office filed an

11  Information charging Nelson R. Acosta with the following crimes:

12  one count of first degree robbery, in violation of California

13  Penal Code ("Penal Code") sections 211 and 212.5(a) (count 1);

14  one count of residential burglary, in violation of Penal Code

15  section 459 (count 2); two counts of assault with a firearm, in

16  violation of Penal Code section 245(a)(2) (counts 3 and 4); one

17  count of false imprisonment, in violation of Penal Code sections

18  236 and 237(a) (count 5); one count of making a criminal threat,

19  in violation of Penal Code section 422 (count 6); one count of

20  drawing or exhibiting a firearm, in violation of Penal Code

21  section 417(a)(2) (count 7); one count of dissuading a witness by

22  force or threat, in violation of Penal Code section 136.1(c)(1)

23  (count 8); and one count of receiving stolen property, in

24  violation of Penal Code section 496(a) (count 9). (CT at 1-4.)

25  A jury found Petitioner guilty on all counts. (CT at 167-176.)

26  The jury further found that in the commission of the crimes

27  alleged in counts 1 through 4 and 8, Petitioner did personally

28  use a firearm, to wit: a handgun, in violation of Penal Code

06cv1527

section 12022.5(a). (CT at 167-171, 175.) As to Count 1, the jury also found that Petitioner's personal use of a firearm, to wit: a handgun, was in violation of Penal Code section 12022.53(b). (CT at 167-168.) Petitioner was sentenced to 19 years, 4 months in prison. (CT at 191-193.)

Petitioner filed a direct appeal challenging his conviction and sentence in the California Court of Appeal, Fourth Appellate District, Division One. (Lodgment Nos. 4-6.) In an unpublished opinion, the California Court of Appeal affirmed Petitioner's conviction and sentence. (Lodgment No. 7.) Petitioner then filed a Petition for Review in the California Supreme Court, which was denied without comment. (Lodgment Nos. 8-9.)

Petitioner filed nunc pro tunc a Petition for Writ of Habeas Corpus, which the Court treats as a "First Amended Petition," pursuant to 28 U.S.C. § 2254 in this Court on October 12, 2006. [Doc. No. 5.] Petitioner filed a "Motion to Hold Direct Appeal in Abeyance While Unexhausted Claims are Litigated in State Court" on May 25, 2007. [Doc. No. 6.] This Court denied the motion on November 14, 2007. [Doc. No. 11.] On January 14, 2008, Respondent filed an Answer to Petitioner's First Amended Petition. [Doc. No. 13.] Petitioner filed a Traverse on February 19, 2008.

## IV.   Discussion

### A. Standard of review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State

06cv1527

court only on the ground that he is in custody in
<u>violation of the Constitution or laws or treaties of
the United States.</u>

28 U.S.C. § 2254(a) (emphasis added).

The current Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997).  As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2).  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) & (2) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-413; <u>see</u> <u>also</u> <u>Lockyer v. Andrade</u>, 538

1  U.S. 63, 73-74 (2003).

2      Where there is no reasoned decision from the state's highest
3  court, this Court "looks through" to the underlying appellate
4  court decision.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-806
5  (1991).  If the dispositive state court order does not "furnish a
6  basis for its reasoning," federal habeas courts must conduct an
7  independent review of the record to determine whether the state
8  court's decision is contrary to, or an unreasonable application
9  of, clearly established Supreme Court law.  <u>See</u> <u>Delgado v. Lewis</u>,
10  223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by
11  <u>Lockyer v. Andrade</u>, <u>supra</u>, 538 U.S. at 75-76); <u>accord</u> <u>Himes v.</u>
12  <u>Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state
13  court need not cite Supreme Court precedent when resolving claims
14  presented on direct or collateral review.  <u>Early v. Packer</u>, 537
15  U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the
16  result of the state-court decision contradicts [Supreme Court
17  precedent,]" <u>id</u>., the state court decision will not be "contrary
18  to" clearly established federal law.  <u>Id</u>.

19      **B.   <u>Consecutive Sentences for a Single Course of Conduct</u>**
20      Petitioner contends that his consecutive sentences for the
21  assault and robbery convictions violated state law as well as
22  Petitioner's federal rights under the Eighth and Fourteenth
23  Amendments of the U.S. Constitution.  (Petition, Ground One.)
24  Petitioner claims that because the assault was committed to
25  accomplish the robbery, the trial court improperly imposed
26  multiple punishments for a single course of conduct.  (Petition
27  at 6.)  Petitioner relies primarily on a state statute
28  prohibiting the imposition of multiple sentences for a single

06cv1527

act.  See Cal. Penal Code § 654(a).  He further asserts that the

consecutive sentences constituted cruel and unusual punishment

under the Eighth Amendment and violated his due process and equal

protection rights under the Fourteenth Amendment to the U.S.

Constitution.[1]  (Petition at 6.)  The Supreme Court of California

denied Petitioner's Petition for Review without comment.

(Lodgment No. 10.)  Thus, this Court must "look through" to the

California Court of Appeal's decision underlying that denial as

the basis for its analysis.  See Ylst v. Nunnemaker, 501 U.S.

797, 801-06 (1991).

### (1)  State Law Claims

Petitioner's state law claim is that the trial court erred

under California Penal Code section 654 in sentencing him to

consecutive terms for his robbery and assault convictions rather

than the longer of the two provisions.  (Petition at 6.)  Matters

relating to a state court's interpretation of state law do not

implicate federal constitutional issues and this Court defers to

and is bound by a state court's interpretation of its own laws.

Wainright v. Goode, 464 U.S. 78, 84 (1983).  Moreover, "[a]

federal court may not issue the writ [of habeas corpus] on the

basis of a perceived error of state law."  Pulley v. Harris, 465

U.S. 37, 41 (1984).  Accordingly, the Ninth Circuit has refused

to review alleged sentencing errors under California Penal Code

---

[1]Petitioner did not raise these federal claims in his appeal to the California Court of Appeal or in his Petition for Review to the California Supreme Court and has thus failed to exhaust the remedies available in state courts.  (See Lodgment Nos. 4 and 8.)  Accordingly, these claims are technically unexhausted and subject to dismissal under 28 U.S.C. § 2254(b)(1)(A).  Notwithstanding Petitioner's failure to exhaust state court remedies, however, this Court may reach the merits of Petitioner's claims pursuant to 28 U.S.C. § 2254(b)(2).

section 654, the same code section challenged by Petitioner in
the present case.  See Watts v. Bonneville, 879 F.2d 685, 687
(9th Cir. 1989).  In affirming the district court's denial of a
writ of habeas corpus in Watts, the Ninth Circuit stated simply
that federal courts are "authorize[d] . . . to grant habeas
corpus relief only for violations of federal law."  Id.

Even if a claimed error of state law were reviewable on a
federal habeas petition, it is apparent that the trail court did
not violate Penal Code section 654.  That statute effectively
precludes multiple punishment for violations of different
provisions of law where the wrongful acts were committed during a
single course of conduct.  People v. Oates, 32 Cal. 4th 1048,
1062 (2004); See Cal. Penal Code § 654(a).  In denying
Petitioner's appeal, the California Court of Appeal noted that a
well established exception to section 654's prohibition against
multiple punishment applies to cases involving crimes of violence
committed against multiple victims.  (Lodgment No. 7 at 6-7.)
This exception, according to the Court of Appeal, is based on the
principle that "a defendant who commits an act of violence with
the intent to harm more than one person . . . is more culpable
than a defendant who harms only one person."  Id. at 7.  The
offenses of robbery and assault were committed by Petitioner
during a single, indivisible course of conduct, but as the Court
of Appeal noted, "Acosta was found guilty in count 1 of robbery
of Cowdin and in count 4 of assault with a firearm on Ehlin."
Id.  The Court further stated that "[b]oth robbery and assault
with a firearm are crimes of violence subject to the multiple
victim exception to section 654."  Id.  The Court of Appeal thus

1   properly concluded that section 654 did not apply to Petitioner's
2   robbery and assault convictions in counts 1 and 4, respectively,
3   and denied his claim.  Id. at 13.

4       Petitioner's claim that the state trial court erred on the
5   basis of state law thus fails both on its merits and because this
6   Court is permitted to entertain an application for writ of habeas
7   corpus only on the ground that a petitioner is in custody in
8   violation of the Constitution or laws of the United States.  28
9   U.S.C. § 2254(a).  While it is clear from U.S. Supreme Court
10  precedent that errors of state law are not the concern of federal
11  habeas courts, it has also been noted that claims for relief will
12  be entertained if the alleged error amounts to a denial of rights
13  protected by the U.S. Constitution.  Wainright, supra, 464 U.S.
14  at 86.  Petitioner asserts alternative arguments for relief
15  suggesting that the consecutive sentences imposed by the trial
16  court amount to violations of the U.S. Constitution.  (Petition
17  at 6.) Therefore, this Court next considers Petitioner's claim
18  that his consecutive sentence for a single act violates the
19  Eighth and Fourteenth Amendments to the U.S. Constitution.

20              **(2)  Cruel and Unusual Punishment**

21      Petitioner claims that the trial court, by imposing
22  consecutive sentences for the robbery and assault charges,
23  violated his Eighth Amendment rights and subjected him to cruel
24  and unusual punishment.  (Petition at 6.)  The California Court
25  of Appeal did not specifically address this claim, so this Court
26  will undertake an independent review based on clearly established
27  Supreme Court law in order to determine whether Petitioner's
28  sentence violates the Eighth Amendment's prohibition against

06cv1527

1  cruel and unusual punishment.   <u>See</u> <u>Delgado</u>, <u>supra</u>, 223 F.3d at
2  982.

3       In <u>Lockyer v. Andrade</u>, 53 U.S. 63 (2003), the Supreme Court
4  concluded that the only clearly established legal principle that
5  could be discerned from the Supreme Court's Eighth Amendment
6  jurisprudence was that "[a] gross disproportionality principle is
7  applicable to sentences for a term of years . . . the precise
8  contours of which are unclear, [and which is] applicable only in
9  the 'exceedingly rare' and 'extreme' case." <u>Andrade</u>, 538 U.S. at
10  72-73 (citing <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991)).
11  Significantly, the United States Supreme Court has stated that
12  although the principle of disproportionality is relevant to the
13  determination of the constitutionality of a sentence for a term
14  of years, "outside the context of capital punishment, successful
15  challenges to the proportionality of particular sentences have
16  been exceedingly rare." <u>Rummel v. Estelle</u>, 445 U.S. 263, 272
17  (1980).  Despite the fact that it is rarely successfully applied
18  in non-capital cases, the proportionality standard of the Eighth
19  Amendment prohibits the imposition of a sentence that is grossly
20  disproportionate to the severity of the crime committed.  <u>Id.</u> at
21  271; <u>Solem v. Helm</u>, 463 U.S. 277, 284 (1983).

22       Whether a particular punishment is grossly disproportionate
23  is to be determined based on objective criteria.  <u>Rummel</u>, <u>supra</u>,
24  445 U.S. at 274-75; <u>Solem</u>, <u>supra</u>, 463 U.S. at 290-91.  In <u>Solem</u>,
25  the Supreme Court stated that when sentences are reviewed under
26  the Eighth Amendment, courts should attempt to draw a comparison
27  between the gravity of the offense and the harshness of the
28  penalty.  <u>Solem</u>, <u>supra</u>, 463 U.S. at 290-91.  Additionally, a

comparison to other sentences imposed in the jurisdiction is relevant to determine the constitutionality of a particular prison sentence. Id. at 291.

As to the gravity of the offense, courts should look to the harm caused to the victim or victims, the magnitude of the crime committed, and the culpability of the offender. Id. at 292-93. The amount of violence involved is an important consideration in determining the gravity of the offense because nonviolent crimes are inherently less serious than crimes marked by violence or the threat of violence. Id.

Petitioner was convicted of assault with a firearm and robbery of an inhabited dwelling house with the personal use of a firearm, to wit: a handgun. (CT 167-76.) The circumstances surrounding Petitioner's crimes indicate that both offenses were crimes of violence and resulted in substantial harm to the victims. The robbery of Mr. Cowdin occurred in his home and under threats of violence with a handgun. (1 RT at 138-45.) Petitioner also tied up the victims and stole Mr. Cowdin's wallet, passport and several large pieces of video recording equipment. (1 RT at 140-41, 151.) The assault on Mr. Ehlin also resulted in substantial harm as Petitioner repeatedly struck Mr. Ehlin on the head with the handgun and kicked him in the face, causing him to bleed from the wounds. (1 RT at 48-54.)

As to the magnitude of the crimes and the culpability of the offender, it should be noted that Petitioner's convictions for first degree robbery and assault with a firearm are appropriately viewed as more severe than a pure robbery or assault charge due to the violence involved. See Solem, supra, 463 U.S. at 293. In

contrast to the crimes involved in Petitioner's case, the
sentences challenged in both Rummel and Solem were imposed for
nonviolent crimes.   In Rummel, the defendant was sentenced to
life in prison under a recidivist statute for the fraudulent use
of a credit card, passing a forged check and false pretenses.
Rummel, supra, 445 U.S. at 274-76.  The life sentence imposed in
that case was found not to constitute cruel and unusual
punishment in violation of the Eighth Amendment.  Id. at 285.
The Supreme Court in Solem found that a sentence of life without
parole was grossly disproportionate to the "relatively minor,"
nonviolent criminal acts of burglary, false pretenses and grand
larceny.  Solem, supra, 463 U.S. at 296-97.  The violent nature
of Petitioner's acts and the resulting harm to the victims are
important considerations regarding the gravity of the offense,
and are particularly relevant in determining the proportionality
of the sentence imposed.

    After assessing the gravity of a particular offense, the
Court determines the appropriateness of the length of the
sentence imposed by comparing the offenses to the harshness of
the penalty imposed.  Solem, supra, 463 U.S. at 290-91.  This
determination is made by comparing the severity of the punishment
to other penalties by looking at the nature and length of the
sentence imposed as well as the surrounding circumstances of the
crimes.  Id. at 294-95.  Both Solem and Rummel dealt with
sentences for life in prison.  In Solem, the Supreme Court found
the sentence was grossly disproportionate to the crime and placed
great weight on the fact that the sentence was for life without
parole, the most severe penalty available to the sentencing

1   court, exceeded only by capital punishment.  Id. at 297.

2   Petitioner's sentence of 19 years, 4 months is not only less

3   severe than the sentences in Rummel and Solem, but Petitioner's

4   criminal acts were more violent and reprehensible than the crimes

5   in those cases.  Based on the objective criteria set forth by the

6   Supreme Court, Petitioner's sentence should not be viewed as

7   grossly disproportionate to his crimes.

8        Additionally, the Supreme Court has stated that, as to the

9   appropriateness of the length of sentence imposed for particular

10  crimes, substantial deference should be granted to the broad

11  authority of legislatures in determining punishments, as well as

12  to the discretion that trial courts possess in sentencing

13  convicted criminals.  Solem, supra, 463 U.S. at 290.  Indeed,

14  "one could argue without fear of contradiction by any decision of

15  [the U.S. Supreme Court] that for crimes concededly classified

16  and classifiable as felonies, that is, as punishable by

17  significant terms of imprisonment in a state penitentiary, the

18  length of the sentence actually imposed is purely a matter of

19  legislative prerogative."  Rummel, supra, 445 U.S. at 273.

20       Petitioner does not dispute the fact that the crimes of

21  first degree robbery and assault with a firearm are each crimes

22  of violence punishable as felonies in California.  See Cal. Penal

23  Code §§ 212.5 & 245.  Rather, he contends that because these

24  crimes were committed during one continuous, indivisible course

25  of conduct, they constitute a single act and the trial court's

26  imposition of consecutive sentences for these crimes amounts to

27  cruel and unusual punishment.  (Petition, Ground One.)  As

28  discussed in Solem, supra, in finding that Petitioner was

06cv1527

properly sentenced to separate prison terms for the robbery and assault convictions, the California Court of Appeal relied on the language of the California statute at issue and the widely recognized exception to the statutory prohibition against multiple punishment. (Lodgment No. 7 at 6-7.)  The Court of Appeal noted that California Penal Code section 654 is intended to prohibit multiple punishment for violations of multiple statutory provisions where the acts or omissions occurred during a single, indivisible course of conduct. (Lodgment No. 7 at 6.) According to the court, the prohibition against multiple punishment does not apply where one course of conduct has two results, each of which is an act of violence against a separate individual.  Id.  This finding is not only a matter of the application of state law, but it is an interpretation of legislative intent, and, as stated by the U.S. Supreme Court, determinations regarding the appropriate length of prison terms is an issue properly and exclusively left to the legislature. Solem, supra, 463 U.S. at 290.

Based on an objective review of the facts of Petitioner's crime and the sentence imposed by the state court, a finding of gross disproportionality is clearly unwarranted.  Comparing the gravity of the offense to the severity of the sentence imposed, Petitioner's sentence is not one of the "exceedingly rare" or "extreme" cases that warrant a finding of gross dispropor-tionality.  See Andrade, supra, 538 U.S. at 72-73.  As noted above, "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle - the precise contours of which are

06cv1527

1   unclear." <u>Id.</u> at 75-76.  Thus, the Court of Appeal's decision
2   was not contrary to, or an unreasonable application of, clearly
3   established U.S. Supreme Court law because Petitioner's sentence
4   was not grossly disproportionate in light of the serious nature
5   of his crime.  <u>Williams</u>, <u>supra</u>, 529 U.S. at 412-413.

6                    **(3)  Due Process and Equal Protection Violations**

7           Petitioner also asserts that the trial court violated his
8   constitutional rights of due process and equal protection when it
9   imposed consecutive sentences for his robbery and assault
10  convictions.  (Petition, Ground One.)  Petitioner argues that the
11  two crimes rest on the same course of conduct and should not be
12  punished separately.  The U.S. Supreme Court has held that where
13  two statutory violations rest on the same conduct, a defendant
14  may only be punished for each offense separately if each
15  applicable provision requires proof of a fact which the other
16  does not.  <u>Ball v. U.S.</u>, 470 U.S. 856, 861 (1985).  This rule is
17  intended to apply to situations involving two independent but
18  overlapping statutes directed at deterring and punishing the same
19  evils.  <u>Id.</u> at 863-65.  The rule prevents punishment under both
20  statutes, because it is presumed that the legislative intent
21  behind the overlapping provisions was not to punish the same
22  offense under both statutes, and doing so would effectively
23  result in unauthorized punishment in violation of the due process
24  clause.  <u>Id.</u> at 861.
25          This rule is inapplicable in Petitioner's case because
26  rather than contending the he was wrongly punished twice for the
27  same act, Petitioner is challenging the imposition of consecutive
28  sentences for two separate criminal acts.  Moreover, robbery and

06cv1527

1  assault are separate and distinct crimes requiring proof of

2  different conduct and facts, and do not implicate the rule set

3  forth in <u>Ball</u>, <u>supra</u>, because they are directed at entirely

4  different and distinct conduct.  Accordingly, the Court concludes

5  that the state court's denial of Petitioner's claims was neither

6  contrary to, nor an unreasonable application of, clearly

7  established Supreme Court law.  Therefore, the claims should be

8  denied.  <u>Williams</u>, <u>supra</u>, 529 U.S. at 412-413.

9  **C.   <u>Insufficiency of the Evidence</u>**

10      Petitioner contends that the evidence was constitutionally

11  insufficient to support his conviction for receiving stolen

12  property because the owner of the property never testified at

13  trial.  (Petition, Ground Two.)  On this issue, the California

14  Supreme Court denied Petitioner's Petition for Review without

15  comment.  (Lodgment No. 9.)  Thus, this Court must "look through"

16  to the California Court of Appeal's decision underlying that

17  denial as the basis for its analysis.  <u>See</u> <u>Ylst v. Nunnemaker</u>,

18  <u>supra</u>, 501 U.S. at 801-06.

19      The Fourteenth Amendment's Due Process Clause is violated

20  "if it is found that upon the evidence adduced at the trial no

21  rational trier of fact could have found proof of guilt beyond a

22  reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 324

23  (1979).  In deciding whether a due process violation has

24  occurred, this Court must look to "the substantive elements of

25  the criminal offense as defined by state law."  <u>Jackson</u>, 443 U.S.

26  at 324, n. 16.  Under California law, "[e]very person who buys or

27  receives property that has been stolen . . . or who conceals,

28  sells, withholds, or aids in concealing, selling, or withholding

any property from the owner, knowing the property to be stolen .
. . shall be punished by imprisonment in a state prison, or in a
county jail for not more than one year." Cal. Penal Code
§ 496(a).

In California, the essential elements of receiving stolen
property are (1) that the property has been stolen; (2) that the
accused knew the property was stolen; and (3)that the accused
received, concealed or withheld it from its owner. People v.
Stuart, 272 Cal. App. 2d 653, 656 (1969); People v. King, 81 Cal.
App. 4th 472, 476 (2000). Petitioner asserts that the evidence
is insufficient to prove the first element because the owner of
the property never testified that the property was stolen.
(Petition at 7.) However, under California law, no distinction
is drawn between direct and circumstantial evidence with regard
to the degree of proof required for a conviction for receiving
stolen property, and circumstantial evidence may be used to prove
the guilt or innocence of an accused. See Stuart, supra, 272
Cal. App. 2d at 656. Here, where Petitioner is challenging the
sufficiency of the evidence relied upon for his conviction for
receiving stolen property, the question is whether, after viewing
the evidence introduced at trial in the light most favorable to
the prosecution, any rational trier of fact could have found the
essential elements of the crime of receiving stolen property
beyond a reasonable doubt. Jackson, 443 U.S. at 319.

During a police investigation into the robbery of Mr. Ehlin
and Mr. Cowdin, the investigating officer, Detective Keene,
obtained a search warrant for Tamara Beachum's residence. (2 RT
at 384.) During the search, police found a Compaq laptop computer

in the apartment.  (2 RT at 405.)  Ms. Beachum testified at
Petitioner's trial that Petitioner, who Ms. Beachum referred to
as "Junior," had given her the computer as a gift.  (2 RT at
302.)  The computer contained folders labeled "Junior" and
"Tamara" as well as a file entitled "Seth Terndrup's Resume."  (2
RT at 405.)   Detective Keene contacted Mr. Terndrup, who came to
the police station with documentation showing the serial number
found on the computer, and a sales slip that showed he had
purchased the computer on December 3, 2003, fewer than three
months prior to the search which uncovered the computer.
(Lodgment No. 7 at 4-5; 2 RT at 405-09.)   Detective Keene
testified that in an interview with Petitioner, Petitioner stated
that he had purchased the computer on the streets for one hundred
dollars.  (3 RT at 473-74.)  When Detective Keene asked him if he
thought the computer was stolen, Petitioner responded, "I guess I
figured for the price."  (3 RT at 476.)

Significantly, California law does not require the
prosecution to call any particular witness who may have knowledge
of the events.  See People v. Stanley, 67 Cal. 2d 812, 820
(1967).  Thus, Petitioner's claim that the evidence is
insufficient to prove that the computer was stolen because the
lawful owner of the computer never testified is without merit.
So long as a rational jury, based on the evidence that was
produced at trial, could conclude beyond a reasonable doubt that
the property was in fact stolen, the standard is met as to that
element.  See Jackson, supra, 443 U.S. at 324.  The evidence
introduced at trial relating to the manner in which Petitioner
obtained the computer and the price he paid for it could lead a

06cv1527

1  rational jury to conclude that the computer had been stolen.

2  Moreover, the existence on the computer of the file entitled

3  "Seth Terndrup's Resume," as well as the fact that Mr. Terndrup

4  claimed the computer with a sales slip and warranty documents

5  displaying the same serial number as that found on the computer,

6  further support the Court of Appeal's finding that there was

7  sufficient circumstantial evidence from which the jury could

8  infer that the computer was stolen.

9      A review of the record of Petitioner's trial reveals that

10 the state court's denial of Petitioner's claim was not contrary

11 to, or an unreasonable application of, <u>Jackson</u> in light of

12 California law regarding the receipt of stolen property.  The

13 evidence was plainly sufficient to support Petitioner's

14 conviction for receiving stolen property.  The evidence showed

15 that Petitioner purchased the computer on the streets, under

16 conditions which suggested that the computer was stolen, that

17 Petitioner knew it was stolen and that Petitioner received the

18 property.  A rational trier of fact could have found beyond a

19 reasonable doubt that Petitioner committed this crime.  <u>See</u>

20 <u>Jackson v. Virginia</u>, <u>supra</u>, 443 U.S. at 324.  Thus, the

21 California Supreme Court reasonably applied the <u>Jackson</u> standard

22 in denying Petitioner's claim.  Accordingly, Petitioner was not

23 denied due process, and this claim should be denied.

24 **V.    <u>Recommendation</u>**

25     After a thorough review of the record in this matter, the

26 undersigned magistrate judge finds that Petitioner has not shown

27 that he is entitled to federal habeas relief under the applicable

28 legal standards.  Therefore, the undersigned magistrate judge

06cv1527

1  hereby recommends that the Petition be **DENIED WITH PREJUDICE** and

2  that judgment be entered accordingly.

3      This Report and Recommendation is submitted to the Honorable

4  William Q. Hayes, United States District Judge assigned to this

5  case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

6      **IT IS ORDERED** that not later than **June 6, 2008**, any party

7  may file written objections with the Court and serve a copy on

8  all parties.  The document should be captioned "Objections to

9  Report and Recommendation."

10     **IT IS FURTHER ORDERED** that any reply to the objections shall

11 be served and filed not later than **June 20, 2008**.  The parties

12 are advised that failure to file objections within the specified

13 time may waive the right to raise those objections on appeal of

14 the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

15 Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

16     **IT IS SO ORDERED.**

17 DATED:  May 5, 2008

18                              Jan M. Adler

19                              U.S. Magistrate Judge

20

21

22

23

24

25

26

27

28

06cv1527